The PIZZA INN, INC., Appellant,

v.

Leonard V. LUMAR, dba Lenny's Pizza Den & Pizza Den, Appellee.

No. 4719.

Court of Civil Appeals of Texas, Eastland.

Aug. 2, 1974.

Rehearing Denied Aug. 30, 1974.

Waylon E. McMullen, McMullen & Snyder, Dallas, for appellant.

Linda S. Aland, Watson, Davis, Strother, Methvin & Blackburn, Dallas, Martin, Hopkins & Lemon, Roanoke, Va., for appellee.

McCLOUD, Chief Justice.

This is an appeal by plaintiff, The Pizza Inn, Inc., from a judgment dismissing its suit for lack of jurisdiction over the person of defendant, Leonard V. Lumar d/b/a Lenny's Pizza Den and Pizza Den.

Plaintiff, a Texas corporation, sued defendant, a resident of Virginia, alleging defendant breached a franchise agreement entered into by the parties. Defendant, who was served pursuant to the Texas "Long Arm" Statute, Article 2031b, Vernon's Ann.Tex.Civ.St., filed a special appearance under Rule 120a, Texas Rules of Civil Procedure, for the sole purpose of objecting to the jurisdiction of the court over his person. The court sustained defendant's contention and dismissed plaintiff's suit. We reverse and remand.

Under the written franchise agreement entered into by the parties, defendant was granted a franchise to operate one or more Pizza Inns in Roanoke County, Virginia. The agreement provided that defendant would pay plaintiff monthly three percent (3%) of the gross income received by defendant from the operation of all Inns. Plaintiff alleged that defendant failed and

refused to make the monthly royalty payments as required and that such action constituted a material breach as defined in Paragraph 13 of the agreement. Paragraph 13.2 provides that in the event of a breach the plaintiff may declare all unpaid sums immediately due and, "Franchisee agrees to pay the sums at the office of the Company in Texas. . ." Under paragraph 14 of the agreement defendant agrees to pay all "charges" provided for in the agreement at the "office of the Pizza Inn, Inc., in Arlington, Texas." The contract also stated that the "Franchise Fee . . . of $7,500 of which sum $4,750 has been paid by check," was payable at the office of the "Pizza Inn, Inc., in Arlington, Texas." Plaintiff alleged but failed to prove that defendant had made all monthly royalty payments, until February 1, 1973, in Texas.

The trial court found that in late March or early April of 1970, defendant received a telephone call at his home in Virginia from J. W. Whitehead, an employee of plaintiff, concerning the possibility of defendant entering into a franchise agreement whereby he would open and operate two Pizza Inn units in Roanoke County, Virginia. During this telephone conversation Whitehead requested that defendant send him a check for $2,000 as a down payment to hold the franchise. On April 22, 1970, defendant sent a $2,000 check to Whitehead in Dallas, Texas, and requested that the necessary forms be sent to him.

The court found further that defendant met with two executives of plaintiff in Arlington, Texas, in the spring of 1970, regarding the franchise for Roanoke County. Also, that on May 27, 1970, defendant executed the agreement under consideration in Virginia and mailed it to plaintiff in Arlington, Texas, together with a check for $2,750, which was the remaining sum owed on the Franchise Fee. The court found that on May 27, 1970, the franchise agreement was accepted by L. A. St. Romain, a vice president of plaintiff, in Arlington, Texas.

The franchise agreement provided that it would be binding on the defendant at the time he signed it, but would not be binding upon plaintiff until such contract was accepted by one of plaintiff's officers at plaintiff's home office in Arlington, Texas.

■ The issue is whether the Texas court has in personam jurisdiction over the nonresident defendant. This determination requires a two-fold inquiry. We must first determine whether the nonresident defendant is amenable to process under the Texas "Long Arm" Statute, Article 2031b, supra. The second inquiry is whether the exercise of personal jurisdiction over the defendant is consistent with the requirements of due process of law under the United States Constitution. If the defendant is amenable to process under the Texas "Long Arm" Statute, and if the exercise of personal jurisdiction over the defendant does not offend the requirements of due process, then the courts of Texas have jurisdiction over the defendant. Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228 (5th Cir. 1973); Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966).

The Texas "Long Arm" Statute provides that any nonresident person who engages in business in this state without maintaining a regular place of business in the state or a designated agent upon whom service may be made is deemed to have appointed the Secretary of State of Texas as agent upon whom service of process may be made in any suit arising out of such business done in this state. Article 2031b, Section (3). The statute provides further in Section (4) that such nonresident person:

"shall be deemed doing business in this State by entering into contract by mail or otherwise *with a resident of Texas to be performed in whole or in part by either party in this State*. . ." (Emphasis added.)

The franchise agreement in the instant case expressly provided for certain pay-

ments to be made by defendant to plaintiff in Texas. The court found that at the time defendant mailed the contract to plaintiff he also mailed a check for $2,750. This sum was part of the "Franchise Fee" and under the contract was payable to plaintiff in Arlington, Texas.

We conclude that defendant was "doing business" in the State of Texas as defined in Article 2031b, supra, by entering into a contract by mail with a resident of Texas, which contract was performable, at least in part, in Texas. The trial court had personal jurisdiction over the defendant if the grasp of the statute does not exceed federal constitutional limitations.

The Texas Supreme Court in O'Brien v. Lanpar Company, 399 S.W.2d 340 (1966), indicated that due process required that the following three factors exist before jurisdiction could be asserted over a nonresident defendant:

(1) The nonresident defendant . . . must purposefully do some act or consummate some transaction in the forum state:

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice.

See also: International Shoe Company v. State of Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In Uvalde Rock Asphalt Company v. Consolidated Carpet Corp., 457 S.W.2d 649 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.) the court held that payment to a Texas corporation by a foreign corporation pursuant to a contract entered into by mail was sufficient contact to subject the nonresident defendant to the jurisdiction of Texas courts. The court said:

"Carpet Corporation made two payments to Uvalde in Texas in accordance with the contract. It is our opinion that the payment of $3,473.73 in Texas determined that the foreign corporation, Carpet Corporation, had sufficient contact, ties or relations with the forum, and participated in the kind of activities in Texas so as to make it subject to the jurisdiction of the State of Texas. Such contacts, minimal though they may be on the part of Carpet Corporation, do not offend the traditional notions of fair play and substantial justice. . . "

See also: Custom Textiles, Inc. v. Crown Sample Book Company, 472 S.W.2d 848 (Tex.Civ.App.—Waco 1971, writ ref'd n. r. e.); National Truckers Service, Inc. v. Aero Systems, Inc., 480 S.W.2d 455 (Tex. Civ.App.—Fort Worth 1972, writ ref'd n. r. e.); Castel v. Berg, 415 S.W.2d 523 (Tex.Civ.App.—Dallas 1967, no writ).

The case of Sun-X International Company v. Witt, 413 S.W.2d 761 (Tex.Civ.App. —Texarkana 1967, writ ref'd n. r. e.) relied upon by defendant is distinguishable. There all negotiations took place in California; the nonresident defendant, Witt, at no time came to Texas in connection with the contract; the contract did not provide that the California resident, Witt, was to make any payments to the Texas corporation, Sun-X, in Texas; and, at the time the contract was signed by Witt in California, he delivered a check to Sun-X's California representative in payment for materials purchased under the contract.

In the instant case the record reflects that defendant was interested in acquiring a franchise from plaintiff for Roanoke County, Virginia. On April 22, 1970, he sent a $2,000 check to J. W. Whitehead in Dallas, Texas, as a down payment to hold the franchise. He also met with two of plaintiff's executives in

Arlington, Texas, regarding the franchise. On May 27, 1970, defendant signed the agreement in Virginia and mailed it together with a check for $2,750 to plaintiff in Texas. The contract was signed and accepted by plaintiff in Texas. The franchise agreement was detailed and required numerous acts of both parties. The contract expressly provided that certain payments were to be made by defendant to plaintiff in Texas. The agreement was substantial rather than casual or fortuitous.

We hold the evidence conclusively establishes that the defendant purposefully elected to consummate certain transactions in Texas. Plaintiff's suit is based upon the franchise agreement entered into by the parties. The required "minimal contact" with Texas was established and the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir. 1974).

The judgment of the trial court is reversed and the cause remanded.